```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x
MANDEL RESNIK KAISER MOSKOWITZ &     :
GREENSTEIN P.C.,                     :
                                     :
                Plaintiff,           :
                                     :   03 Civ. 8019 (BSJ)
        v.                           :
                                     :        Opinion
EXECUTIVE RISK INDEMNITY INC.,       :
                                     :
                Defendant.           :
------------------------------------x
```
**BARBARA S. JONES**
**UNITED STATES DISTRICT JUDGE**

This case involves a conflict between an insurance company and a policyholder. Mandel Resnik Kaiser Moskowitz & Greenstein P.C. ("MRK" or "insured"), a New York law firm, purchased a professional liability insurance policy from Executive Risk Indemnity Inc. ("ERII" or "insurer"). When a client of MRK's brought suit against the firm in an adversary proceeding in Bankruptcy Court in the District of Delaware, the firm immediately notified ERII, its insurer, of the suit. The insured now brings this motion for summary judgment, seeking a declaratory judgment that ERII is required to provide defense coverage. The insurer has made a cross-motion for judgment on the pleadings and a declaratory judgment that coverage is not required.

Background

American Tissue Inc. ("American Tissue"), a longtime client of MRK's, was in bankruptcy proceedings when MRK made an application to the Bankruptcy Court for fees owed. In December 2002, American Tissue objected to MRK's application, alleging that more than $7 million in work charged to it by MRK was actually performed for "non debtor" affiliates of American Tissue.

MRK immediately advised ERII of American Tissue's Objection, and requested defense coverage under its policy with ERII, including permission to retain outside counsel. (December 18, 2002 Letter; Resnik Aff. Exh. D.) It took ERII three months to formally articulate its coverage position. In a letter dated March 17, 2003, ERII wrote that American Tissue's December 2002 filing "meets the definition [of a] **Claim**..." and that MRK had "the right and duty to defend Claims and to retain qualified counsel of their choosing to represent them...." With regard to the outside counsel MRK sought, the letter confirmed: "As we discussed, ERII consents to their engagement." (Resnik Aff. Exh. H.)

In the same letter, ERII cautioned MRK that:

> Although this matter is a **Claim**, we note that the Objection only seeks to prohibit and/or delay payment of the **Firm's** fees. . .[1] (Id.)

---

[1] The Defendant makes much of the fact that its letter went on to caution MRK that ERII did not promise to indemnify MRK if the claim turned out not to result from a "wrongful act" committed in the performance of "professional services," or if it were the result of fraudulent or criminal action by MRK.

2

In reliance on ERII's written authorization and the phone conversations that preceded it, MRK retained outside counsel and undertook to defend itself. Over the next few months, MRK kept ERII apprised of the activity in the case. (Resnik Aff. Exhs. F, G, I, J.)

In June 2003, American Tissue filed suit against MRK. MRK informed ERII immediately and asked for the insurer's consent to continue using the retained attorneys to defend the action. (June 18, 2003 Letter; Resnik Aff. Exh. L.) ERII did not object; in fact it did not reply in writing.

Over the next two months, MRK proceeded to keep ERII informed of the progress of the adversary proceeding. In July, MRK forwarded ERII correspondence in the underlying action, and asked where it should send the bills for defense of the claim. (July 23, 2003 Letter; Resnik Aff. Exh. N.) The letter also requested that in addition to the outside attorneys, the costs of MRK's own lawyers' work on the case be reimbursed at a reduced rate. (Id.) On August 6, 2003, MRK wrote to ERII: "In furtherance of our telephone conversation of yesterday, enclosed please find (i) a summary of all legal fee payments made to date by this firm [in the defense of the case]." Notably, this

---

However, this is irrelevant to the question at issue here: whether the insurer is obligated to cover the cost of MRK's defense of the claim.

letter informed ERII that the $75,000 deductible was about to be exceeded. (Resnik Aff. Exh. O.)

A month later, and nearly three months after the lawsuit was filed, ERII for the first time suggested to MRK in a phone conversation that it would not cover the costs of defense. (Resnik Aff. Exh. Q.) Shortly thereafter, MRK filed suit in this court alleging breach of contract. MRK has made a motion for summary judgment on the grounds that the policy obligated ERII to cover its defense of the claim. ERII has made its own motion for judgment on the pleadings and a declaratory judgment that MRK is not entitled to coverage.

## Analysis

The essence of this conflict is whether the insurer is obligated to defend a claim brought by its insured, even if the ultimate resolution of the claim might fall outside of the policy's obligation to indemnify.

The parties have raised this question in the context of a motion for summary judgment. Summary judgment may be granted in connection with a declaratory judgment action regarding insurance coverage. See Bluestein & Sander v. Chi. Ins. Co., 2001 WL 167707, *2 (S.D.N.Y.); Morris v. Prog. Cas. Ins. Co., 662 F.Supp. 1489, 1491-92 (S.D.N.Y. 1987).

In a motion for summary judgment the moving party must show that there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. See FED. R. CIV. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317 (1986). In deciding the motion, the district court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor.

Because the Court's jurisdiction in this matter is based on diversity of citizenship, New York substantive law governs this action. Erie R.R. Co. v. Tompkins, 304 U.S. 64 (1938).

Does the Policy Require ERII to Defend the Claim?

ERII argues that it is not obligated to defend MRK because the substance of the underlying adversary proceeding is not covered by the policy. ERII insists that it is not a claim made "in connection with" professional services rendered by MRK because it "does not allege any Wrongful Act" in the performance of professional services, but rather is simply a "billing dispute." (Def. Mem. Opp'n at 4.)

The policy's exclusions, as stated in Section III, do not specifically exempt billing disputes from coverage. The policy as a whole covers claims made against the insured for Wrongful Acts, which are defined in Section II.J. of the Policy as "any actual or alleged act, error, omission, breach of contract or

duty, libel or slander . . . but only in connection with the performance of, or actual or alleged failure to perform, Professional Services." Professional Services are "services provided to others . . . as an attorney." (Policy Section II.H; Resnik Aff. Exh. B.) The policy neither specifies nor limits the definition of those services.

MRK, the Plaintiff in this action, seeks summary judgment only on the question of whether its insurer must cover the cost of *defending* the underlying adversary proceeding. Whether ERII, the insurer, is ultimately responsible to indemnify MRK in the event of loss is a separate issue. However, determining whether indemnification is *possible* is necessary to deciding whether the insurer is obligated to defend.

In New York, the duty to defend is "exceedingly broader" than the duty to indemnify. Md. Cas. Co. v. Cont'l Cas. Co., 332 F.3d 145, 160 (2d Cir. 2003). To avoid defending the insured based on a policy exclusion, the insurer must show that the claims in the complaint fall "*solely* and *entirely* within the policy exclusions, and further, that the allegations *in toto* are subject to no other interpretation." Napoli, Kaiser & Bern, LLP v. Westport Ins. Corp., 295 F.Supp.2d 335, 338 (S.D.N.Y. 2003) (emphasis original) (citing Seaboard Surety Co. v. Gillette Co., 486 N.Y.S.2d 873, 476 N.E.2d 272, 276 (1984)). Otherwise, the duty to defend exists unless "there is no possible factual or

legal basis on which the insurer will be obligated to indemnify the insured." Md. Cas. Co., 332 F.3d at 160.

The Court may look at "the four corners of the complaint," as well as the insurer's actual knowledge of relevant facts, to determine whether there is a possible basis for indemnification. Id.; Frontier Insulation Contractors, Inc. v. Merch. Mut. Ins. Co., 91 N.Y.2d 169, 175 (N.Y. 1997).

The Complaint, which was filed in Bankruptcy Court in the District of Delaware in June 2003, seeks to "avoid and recover fraudulent transfers."[2] However, ERII does not allege that the Complaint falls in the Policy's fraud exclusion, Section III.A. Instead, ERII insists that the problem raised by the Adversary Proceeding involves merely a "billing dispute."

---

[2] The charges in the Complaint, as amended, are based on three sections of New York's Debtors and Creditors Law and two companion sections of the Federal Bankruptcy Code. They are:
NY CLS Dr & Cr § 273 (2005): Conveyances by insolvent
Every conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance is made or the obligation is incurred without a fair consideration.
NY CLS Dr & Cr § 274 (2005): Conveyances by persons in business
Every conveyance made without fair consideration when the person making it is engaged or is about to engage in a business or transaction for which the property remaining in his hands after the conveyance is an unreasonably small capital, is fraudulent as to creditors and as to other persons who become creditors during the continuance of such business or transaction without regard to his actual intent.
NY CLS Dr & Cr § 276 (2005): Conveyance made with intent to defraud
Every conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud either present or future creditors, is fraudulent as to both present and future creditors.
See also 11 U.S.C. §548(a)(1)(A) & (B), Fraudulent transfers and obligations; and 11 U.S.C. §550, Liability of transferee of avoided transfer.

MRK, for its part, points out that resolving the underlying conflict is a good bit more complicated than ironing out a $7 million billing dispute. Other relevant issues, like whether MRK's legal services benefited the Debtors or not, must be determined in order to resolve the conflict. Moreover, MRK's decisions about how and whom to charge for its legal work could certainly be found to be "services provided . . . as an attorney," as the Policy defines "Professional Services."

Thus, the Complaint's allegations of fraudulent transfers do not fall "*solely* and *entirely* within the policy exclusions," nor are they "subject to no other interpretation." Napoli, 295 F.Supp.2d at 338. The Complaint on its face does not unequivocally excuse ERII from indemnifying its policyholder.

In addition, extrinsic evidence as to parties' intent regarding coverage is admissible. Md. Cas. Co., 332 F.3d at 161-62. This evidence also supports MRK.

ERII, the insurer, kept an internal memo containing a timeline of the progress of MRK's claim. In March 2003, after American Tissue filed its initial objection, the memo noted: "We are posting a $25,000 defense reserve...This reserve only reflects the fees necessary to the Objection(s). Should a malpractice suit be filed, the reserve would then need to be reevaluated." (Resnik Aff. Exh. U.) It is evident from this entry that ERII expected to defend the claim.

On August 5, 2003, the internal timeline noted, "Insured reports that they have spent $75,000 already...Therefore we will increase Defense Reserve to $100,000...I believe this has the earmarks of being expensive litigation..." (Resnik Aff. Exh. U.) Less than two weeks later, the administrator noted that in a meeting with his supervisors, "We determined that the allegations involving billing issues which are the basis of the claim (that is, which services to bill what related client) are "in connection with" the professional services rendered by the Insured, and thus, a Wrongful Act has been alleged." (Id., August 14, 2003 entry.)

The insurer's internal assessment on August 14, 2003 that it would have to defend its policyholder is strong evidence of its obligation to do so. The assessor, whose job was to evaluate claims by policyholders, came to a professional judgment that the underlying proceedings were covered by the liability policy. ERII's attempt to dispute coverage began a few weeks after this internal assessment was made, and soon after the deductible on the policy had been exhausted.

The Court finds that ERII is obligated to defend MRK on the underlying proceedings. ERII has not shown that those proceedings are definitively excluded by the Policy. In the absence of such a showing ERII bears the burden of defense, even if it is not ultimately obligated to indemnify.

9

Related Claim

MRK also asserts, as an alternative basis for relief, that ERII is obligated to defend the lawsuit under the policy because it is a "related claim" to the original objection filed in December 2002. Having found that the Complaint filed in the June 2003 lawsuit obligates ERII to defend that lawsuit, the Court need not determine the relatedness of the earlier-filed objection. However, the Court notes that the lawsuit is manifestly related to the objection, and under the policy must be afforded the same "treatment" as the initial claim.

Two sections of the policy refer to related claims. Section II, the definitional section, defines related claims as "all **Claims** based on, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving the same or related facts, circumstances, situations, transactions, events or **Wrongful Acts** or the same or related series of facts, circumstances, situations, transactions, events or **Wrongful Acts**." (Section II.I.) Section IV, the "Conditions" section of the policy, specifies that "All **Related Claims** will be treated as a single **Claim** made at the time the first of such **Related Claims** was made . . ." (Section IV.D (2))

The Defendant argues that related claims are defined solely as a matter of their timing – "<u>when</u> a claim will be deemed to have been first made" – not with regards to whether they will be

10

covered under the policy. (Opp'n Mot. at 9-10.)  The Defendant's reading of the policy is incorrect.  If ERII intended to limit the scope of the "related claim" language to reporting obligations only, it could have done so.  Instead, the contract clearly states that "**Related Claims** will be treated as a single **Claim** made at the time the first of such **Related Claims** was made . . ."  The policy does not distinguish between the coverage standard for initial claims and that for timely-reported related claims.

There can be no factual question that the two claims are related.  The Complaint filed in June 2003 describes an inquiry into whom MRK billed, what American Tissue paid for, and what work was done for which entities.  This is precisely the set of facts at issue in the earlier-filed objection.  ERII, having recognized that objection as a Claim under the Policy, cannot refuse coverage of the Complaint as unrelated.

Equitable Estoppel Claim

MRK asserts that even if the Court were to find that the Policy does not provide coverage, ERII should be estopped from denying coverage because MRK undertook its defense in reliance on ERII's initial approval.  However, to make out a successful estoppel claim in New York, the insured must show it was prejudiced by an unreasonable delay.  See, e.g., Western World

11

Ins. Co., Inc., v. Jean & Benny's Restaurant, Inc., 69 A.D.2d 260, 263 (2d Dep't 1979). ("Under the common law only where prejudice as a result of the unreasonable delay is shown by adequate proof is the insurer estopped from asserting noncoverage.") In this case, although MRK waited three months for ERII to formally articulate its coverage position, MRK undertook its own defense in the interim and was not deprived of the opportunity to defend itself. MRK's argument that it wouldn't have spent (as much) money defending the adversary proceeding if it hadn't believed its insurer would pay does not amount to prejudice. Bd. of Ed. Yonkers City School Dist. v. CAN Ins. Co., 647 F. Supp. 1495, 1507 n.6 (S.D.N.Y. 1986). Accordingly, estoppel does not provide a separate basis for MRK's claim for defense coverage.

## Conclusion

The insurer bears a heavy burden in seeking to avoid the duty to defend. Napoli, 295 F.Supp.2d at 338; Hugo Boss Fashions, Inc. v. Fed. Ins. Co., 252 F.3d 608, 620 (2d Cir. 2001). Evaluating the facts in the light most favorable to the non-moving party, no genuine issue of material fact has been presented that suggests the underlying proceedings could be wholly outside the Policy. As a result, ERII must meet its duty

to defend. Summary judgment for MRK is granted, and accordingly, ERII's cross motion is denied.

Declaratory judgment is hereby entered on behalf of MRK, which is entitled to recover the cost, above the Policy deductible, of defending itself in the underlying adversary proceeding.

**SO ORDERED:**

BARBARA S. JONES
UNITED STATES DISTRICT JUDGE

Dated:   New York, New York
         July 15, 2005